UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-2 BRIAN W. BENDEROFF,

    Defendant.

Case No. 20-cr-20380 (NGE)(DRG)

Hon. Nancy G. Edmunds

**DEFENDANT'S SUR-REPLY IN OPPOSITION TO THE
GOVERNMENT'S CROSS MOTION IN LIMINE TO FIND BREACH OF
PROFFER AGREEMENT AND ADMIT EVIDENCE**

**A.    The Government's Decision to Stop Pursuing Owner A is a Red
Herring, and it Does Not Change the Fact that Mr. Benderoff is Not
in Material Breach of the Proffer Agreement and Must Be Given
the Opportunity to Cure Any Purported Breach**

Whether or not the government informed Owner A's lawyers that it does not

intend to pursue him,[1] and whether the government truly does not intend to pursue

Owner A in the future, is irrelevant to determining if: (a) Mr. Benderoff materially

breached the plain and unambiguous terms of the *Kastigar* agreement; and (b) Mr.

Benderoff can cure any such breach.  Mr. Benderoff's obligation to submit to a

---

[1] The government provides only a vague representation allegedly made to Owner
A's lawyers.  The government provides no evidence in support.  And, in any event,
the government maintains absolute prosecutorial discretion to pursue Owner A at
any time, including even after a polygraph examination of Mr. Benderoff is
concluded.

polygraph examination under paragraph 5 of the agreement is clear: "**Obligation to submit to a polygraph examination.**  At the option of this office, your client will be given a polygraph examination **<u>to verify the truthfulness and completeness of any proffer statement</u>**."  *See* Proffer Agreement, at ¶ 5 (second bolding and underlining added).  A polygraph is not allowed for anything else, including the government's ability to prosecute *others*.  Mr. Benderoff has made clear that he is ready, willing, and able to sit for a polygraph examination "to verify the truthfulness and completeness of any proffer statement."  Thus, there is no breach, and, to the extent there ever was a breach, Mr. Benderoff has fully cured the breach over 9 months before trial.

The government asks this Court to read words and phrases into the proffer agreement that are simply not there.  The Court cannot do so.  Sixth Circuit case law is clear: "Because *Kastigar* agreements are contracts, we interpret them using 'contract law standards,' looking to the terms of 'the agreement itself' to determine whether a party has breached."  *United States v. Flemming*, 658 F. App'x 777, 790 (6th Cir. 2016) (citation omitted).  The government's decision whether to pursue Owner A or Broker A is irrelevant to this Court's interpretation of the plain and unambiguous *Kastigar* agreement.

Therefore, the only relevant inquiry for this Court is whether Mr. Benderoff breached the agreement because he agreed (through former counsel) to pursue a

legal challenge concerning the propriety of submitting to a polygraph where it appeared the government had breached the *Kasitgar* agreement in the first instance (ECF 36, Filed -04-09-21).[2]; and, if Benderoff did "breach" by making a prior (now withdrawn) legal challenge, whether that breach can be deemed "material" and whether Benderoff effectively "cured" any breach by unequivocally stating that he will take a polygraph examination to "verify the truthfulness and completeness of any proffer statement" over 9 months before trial.  Whether the government decides to pursue others or not is absolutely irrelevant under the plain language of the *Kastigar* agreement.

The government criticizes Mr. Benderoff by arguing that his statement through former counsel that "he would submit to a polygraph only if forced by the Court was a condition that went beyond the proffer agreement, and his change of mind, six months later, did not nullify his repudiation."  ECF No. 76 at PageID.1155. But it is the government that seeks to impose a condition that goes "beyond the proffer agreement."  The government now argues in its reply brief that Mr. Benderoff

---

[2]  This legal challenge was presented in the previously filed Motion in Limine to Rescind Proffer Agreement and Treat Proffers as Plea Discussions (ECF 36, Filed -04-09-21). However, after new counsel was retained (Jeffrey Collins), arising from a prior undisclosed conflict of interest of prior counsel (Patrick Hurford), and after the government belatedly produced the proffers of Owner A, Mr. Benderoff agreed to formally withdraw his legal objections and his prior motion (ECF 64, Filed 08/03/21) and has communicated to the government and to the Court his agreement and willingness to take a polygraph.

was required to submit to a polygraph examination **to support the government's case against other potential defendants**, and because the government decided not to pursue those individuals, Mr. Benderoff's "ship has sailed."

However, the government's argument ignores that the *Kastigar* agreement does NOT permit the government to polygraph Mr. Benderoff so that the government can decide whether to pursue others, nor does it provide that Mr. Benderoff is in breach if the government decides to end an investigation of other targets. The ONLY reason the *Kastigar* agreement provides for the government to polygraph Mr. Benderoff is "to verify the truthfulness and completeness of any proffer statement." And Mr. Benderoff has unequivocally stated that he will take a polygraph examination "to verify the truthfulness and completeness of any proffer statement."

### B. The Timing of the Government's Unilateral Decision to Notify Owner A's Lawyers that the Government Will Not Pursue Him is Highly Suspect, and the Government Stops Short of Stating that it Has Conclusively Decided Never to Pursue Him

The government contends that it (surreptitiously) informed Owner A's lawyers that it does not intend to pursue Owner A on June 29, 2021. Just two weeks earlier, on June 15, 2021, the government informed Mr. Benderoff's counsel that, as to the very issue of whether Mr. Benderoff should submit to a polygraph examination, "[w]e think it will benefit all parties to get a ruling from the court on these motions as soon as possible[.]" *See* **Ex. 1**, 6/15/2021 M. Chasteen Email to J.

Collins.  But instead of waiting for the Court to decide the issue, the government now says it chose to manufacture the sole reason it relies on in its reply brief to ask this Court to find Mr. Benderoff in breach.  There is simply no reason why the government could not wait for this Court to decide the issue that the government itself stated two weeks earlier would "benefit all parties to get a ruling from the court," other than to manufacture a breach after seeing Mr. Benderoff's response brief.

In addition, the Court should question, why, in an investigation that has spanned *over the course of five years*, did the government suddenly decide to inform Owner A's lawyers that the government does not intend to pursue him, *at the very same time* that the parties' cross-motions were pending before this Court to decide? The government's timing is more than mere coincidence; it is clear gamesmanship.

Moreover, the Court should question why the government did not inform this Court that it purportedly informed Owner A's lawyers that he would not be pursued when the parties were before the Court at an August 3, 2021 status conference.  In fact, the government informed the Court that, "we may consider offering [Mr. Benderoff] a new Rule 11 Plea Agreement where there would be the potential for an additional 5k motion for a downward departure if he passed that polygraph examination."  *See* **Ex. 2**, Status Conference Tr., at p. 6, l. 21–p. 7, l. 1.  But if the government already knew that it informed Owner A's lawyers that it did not intend

to pursue him, the potential 5k motion for a downward departure was illusory (there would be no other target for Mr. Benderoff to ever provide information about to obtain the benefit of a 5k motion).  The Court should question the government's timing and its sincerity in the new argument raised for t*he first time* in its reply brief.[3]

Significantly, despite the government stating that it informed Owner A's lawyers that the government would not pursue him as of June 29, 2021, the government did *not* inform Mr. Benderoff's counsel of this fact until filing its reply brief on September 10, 2021.  The government, at the same time, set a September 9, 2021 deadline for Mr. Benderoff to accept a Rule 11 plea offer that the government did not even provide to Mr. Benderoff's counsel in writing until late in the day September 9th.  The government never informed Mr. Benderoff's counsel that there would be no further investigation of Owner A or Broker A, and that the proposed 5k motion in the Rule 11 plea agreement was illusory because the government would never use the information against Owner A or Broker A.  In fact, Mr. Benderoff's

---

[3]  In fact, on February 11, 2021, former counsel for Mr. Benderoff informed the government of the improper motive behind its request for a polygraph, including because discovery in the case revealed a significant business relationship between Assistant U.S. Attorney Andrew Yahkind's wife and Owner A, and because the government's request for a polygraph was made only after Mr. Benderoff prevailed on a contested motion.  *See* **Ex. 3**, February 11, 2021 Letter from P. Hurford to A. Yakind and M. Chasteen.  While the government references the February 11, 2021 letter in its reply at ECF 76, PageID.1148, the government intentionally avoids attaching the letter as an exhibit. It is now attached.

counsel specifically questioned the government about a 5k motion, and the government represented that it was available.  The government purposely set Mr. Benderoff's deadline to accept a Rule 11 plea offer for the day before the government disclosed that it would *not* pursue Owner A, so that Mr. Benderoff would not learn that the potential 5k motion was an *illusory promise*.[4]

Simply put, the government never wanted Mr. Benderoff to actually submit to the polygraph examination.  The government is now manufacturing a reason for this Court to find Mr. Benderoff in material breach so that the government could use his proffers against him.  The government confirms this when it argues, that "even if Benderoff were to sit for a polygraph now, that 'cure' would be weak medicine," and that the government would have "much less confidence in the results."  ECF No. 76, at PageID.1151.  The government concedes it does not care about whether Mr. Benderoff was truthful in his proffers (the only reason the government is permitted to polygraph Mr. Benderoff under the *Kastigar* agreement) and that it simply wants to manufacture a breach to use Mr. Benderoff's proffers against him.

The government stops short of stating that it will never pursue Owner A or Broker A.  The government maintains absolute prosecutorial discretion to pursue

---

4    After the parties negotiated a Rule 11 plea agreement that Mr. Benderoff stated he would accept, the government, in what could only be described as a "bait and switch," provided a written Rule 11 plea agreement that did *not* comport with the terms discussed.

Owner A and Broker A at any time.  The government should not be rewarded for manufacturing alleged "harm" it claims to have sustained, which it could decide at any time to reverse course, and before ever giving this Court an opportunity to rule on the issue that was pending at the time the government apparently made its decision.  This runs counter to the well-settled contract law that parties have a duty to mitigate, not intentionally manufacture, their damages.

### C.   The Government's "Prejudice" Argument Lacks Merit

There is no prejudice to the government.  Trial is not scheduled until May 3, 2022, approximately 8 months away.  Mr. Benderoff informed the government that he would take a polygraph examination in early August 2021.  There is no prejudice to the government, 8 months before trial, to allow Mr. Benderoff the benefit of the parties' bargain in the *Kastigar* agreement.  On the other hand, there is significant prejudice to Mr. Benderoff if the government can use his proffers against him.  The government is asking this Court for relief that far exceeds the intent of the parties as expressed by the plain language of the *Kastigar* agreement.

The government concludes its reply brief by arguing that the "ship has sailed" and "though Brian Benderoff has changed his mind and run to the end of the pier pleading for the vessel to return, the ship has sailed over the horizon, out of view.  It is not required to return to port at Benderoff's beck and call."  ECF No. 76 at PageID.1157.  This idiom is off base.  The government fails to comprehend that the

ship it claims has sailed—the government's pursuit of other individuals—is irrelevant to the issue of whether Mr. Benderoff breached the *Kastigar* agreement or whether he has cured any breach. The government chose to sail a different ship, but the ship Mr. Benderoff continues to occupy remains docked for a trial that is not to begin for approximately 8 months from now, on May 3, 2022. By the government's prior admissions, a polygraph examination would take a maximum of one day, which the government has 8 months to schedule (or 9 months if the government scheduled it in early August 2021).

## **CONCLUSION**

For these reasons and the reasons set forth in Mr. Benderoff's opposition to the government's cross-motion, the Court should find that Mr. Benderoff is not in material breach of the *Kastigar* agreement and that, even if there was a breach, it has been cured. The government's cross-motion should be denied in its entirety.

Respectfully submitted,

/s/ *Jeffrey G. Collins*
Jeffrey G. Collins (P37260)
Attorney for Defendant
1323 Broadway, Suite 800
Detroit, MI 48226
313 963-2303

/s/*Phillip E. Seltzer*
Phillip E. Seltzer (P34530)
Co-Counsel for Defendant
3910 Telegraph Rd, Ste 200
Bloomfield Hills, MI 48302
(248) 593-5000

Dated: September 17, 2021

# Exhibit 1

**From:** Chasteen, Mark (USAMIE)
**Sent:** Tuesday, June 15, 2021 5:01 PM
**To:** Jeffrey Collins <jcollins@collinslegal.net>
**Cc:** mitchell (mitchell@ribitwersabbota.com) <mitchell@ribitwersabbota.com>; Yahkind, Andrew
(USAMIE) <ayahkind@usa.doj.gov>
**Subject:** RE: Benderoff Stip and Order Adjourn Response

Hi Jeff,

We think it will benefit all parties to get a ruling from the court on these motions as soon as possible, but
we're fine with the stipulation to adjourn your deadline to line up with your other pending response.

We filed our response to Mr. Hurford's motion under seal in part to protect information provided on
behalf of uncharged Owner A. We will provide the proffers to you (and Mitch Ribitwer, copied here), if
you agree not to disseminate them and file them or anything referring to them under seal.

Mark Chasteen
Assistant United States Attorney
(313) 226-9555
mark.chasteen@usdoj.gov

# Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

               Plaintiff,

                                 HONORABLE NANCY G. EDMUNDS

     v.

                                 No. 20-CR-20380

BRIAN W. BENDEROFF,

               Defendant.
_____/


STATUS CONFERENCE

Detroit, Michigan – Tuesday, August 3, 2021


Appearances:

Andrew Yahkind
Mark Chasteen
United States Attorney's Office
211 W. Fort Street
Suite 2001
Detroit, MI 48226
313-226-9565
Email: andrew.yahkind@usdoj.gov
Email: mark.chasteen@usdoj.gov
On behalf of Plaintiff

Jeffrey G. Collins
Collins & Collins, P.C.
1323 Broadway
Suite 800
Detroit, MI 48226
313.963-2303
Email: jcollins@collinslegal.net
On behalf of Defendant

                           –   –   –

Status Conference
Tuesday, August 3, 2021

Appearances (Continued):

Phillip E. Seltzer
Lipson, Neilson,
3910 Telegraph Road
Suite 200
Bloomfield Hills, MI 48302
248-593-5000
Email: pseltzer@lipsonneilson.com
On behalf of Defendant

# I N D E X

— — —

Proceeding                                          Page

Status Conference                                     3

Status Conference
Tuesday, August 3, 2021

```
 1          Detroit, Michigan
 2          Tuesday, August 3, 2021
 3          12:00 p.m.
 4                    -    -    -
 5          THE CLERK:  Court calls case number 20-20380,
 6   United States of America vs. Brian Benderoff.  Date and time
 7   set for a status conference.  Would counsel please state
 8   their name for the record.
 9          MR. YAHKIND:  Good morning, Your Honor.  Andrew
10   Yahkind and Mark Chasteen on behalf of the United States.
11          MR. COLLINS:  Good morning, Your Honor.  Jeffrey
12   Collins along with Phillip Seltzer, here on behalf of Brian
13   Benderoff, who is here to my right.
14          THE DEFENDANT:  Good afternoon, Your Honor.
15          THE COURT:  Good afternoon.
16          So I wanted to go forward with this status
17   conference because there are a number of motions filed in
18   this case in which the replies or responses are delinquent,
19   Mr. Collins, and we can't move forward with the case unless
20   and until you file your responses and replies, and they're
21   long overdue.  It feels like this is being dragged out
22   unnecessarily, and I want them in by the end of next week,
23   Friday of next week.  And if you want me to go over which
24   ones they are, be happy to do that.
25          MR. COLLINS:  Well, I appreciate the Court's
```

Case No. 20-CR-20380-02 U.S.A. vs. Brian Benderoff

Status Conference
Tuesday, August 3, 2021

1   concern in wanting to have these motions resolved in an

2   expeditious manner.  I would simply say that one of the

3   motions regarding the motion to rescind the proffer

4   agreement, I have spoken with Mr. Benderoff and we are

5   prepared to withdraw that motion, and he's ready and willing

6   to take a government polygraph, which was the subject of

7   that motion.

8            So the only other response that will be due is

9   our reply, I believe, to the motion to dismiss the

10  indictment which I would just ask for a little more time

11  than just next Friday.  I am new on the case.  The

12  government has been very gracious in giving me all of the

13  discovery I just received recently.  This is not done, as I

14  indicated in the motion to delay, with any intent at all to

15  delay the proceedings.

16           My coming in on the case came about as a result

17  of a conflict that Mr. Benderoff had with prior counsel.

18  That conflict was identified by the government and shared

19  with prior counsel, and there were some hiccups just in the

20  transferring of the file from prior counsel to me, and so I

21  would just ask for a little deference in responding to that

22  one motion regarding the indictment.

23           When we entered that stipulation to have that

24  due, I believe on July 15 before we had it extended, that

25  was premised on the smooth transfer of the file.

          Case No. 20-CR-20380-02 U.S.A. vs. Brian Benderoff

Status Conference
Tuesday, August 3, 2021

1      THE COURT:  Right.  I'll give you until August
2  20th.

3      MR. COLLINS:  August 20th is fine.

4      THE COURT:  Okay.  And you are withdrawing the
5  motion to rescind the proffer agreement, and you agree to a
6  polygraph?

7      MR. COLLINS:  That's correct, Your Honor.

8      MR. YAHKIND:  Your Honor, may I address that?

9      THE COURT:  You may.

10     MR. YAHKIND:  This is a new idea that
11 Mr. Collins proposed to us at about 4:30 yesterday, so we
12 have not had much time to consider this idea, to discuss it
13 at the U.S. Attorney's office.

14     Mr. Collins is certainly within his right to
15 withdraw his motion.  We have a countermotion asking the
16 Court to find Mr. Benderoff in breach of that proffer
17 agreement.  We are not withdrawing our motion.  I don't
18 anticipate us doing so.  We'll discuss that, but I don't
19 think we're going to withdraw our motion, and the reason for
20 that, Your Honor, is we made extensive and exhaustive
21 efforts to have Mr. Benderoff polygraphed in February.  That
22 was six months ago.

23     We had a clear right to have him polygraphed
24 back then.  He refused to be polygraphed.  Instead, he
25 challenged our right to polygraph.  Now, six months later,

Status Conference
Tuesday, August 3, 2021

 1   he's saying, "No, no, no, actually, I'll take the
 2   polygraph."  I don't think, in general, that's a form of
 3   contracts adherence that this Court or the government should
 4   condone.  But more specifically, Your Honor, in this matter,
 5   Mr. Benderoff's decision six months ago prejudiced us in a
 6   very real way.  We were investigating other individuals.  We
 7   were investigating the misconduct, potential misconduct of
 8   other individuals.  A polygraph from Mr. Benderoff six
 9   months ago would have provided us with great utility in that
10   investigation.  We didn't have that, and so we made
11   investigative and prosecutorial decisions without a
12   polygraph to which we were entitled, and that prejudiced us.

13            In many ways, Your Honor, that ship has sailed.
14   We have made decisions without something to which we were
15   entitled.  So I think we are going to continue to ask the
16   Court to find Mr. Benderoff in breach of that agreement
17   based on his decision six months ago.  If Mr. Collins wants
18   to withdraw his motion, I think that's a separate issue, but
19   our motion is not being withdrawn.

20            I do want to raise another issue, Your Honor.
21   We are considering, and we have not fully vetted this idea
22   within our office, that if Mr. Benderoff wants to take a
23   polygraph examination at this time, we may consider offering
24   him a new Rule 11 Plea Agreement where there would be the
25   potential for an additional 5K motion for a downward

             Case No. 20-CR-20380-02 U.S.A. vs. Brian Benderoff

Status Conference
Tuesday, August 3, 2021

 1   departure if he passed that polygraph examination.  But in

 2   our view, that's separate from whether or not he breached

 3   his proffer agreement six months ago.  So at this point, we

 4   are not withdrawing our motion, and we are asking the Court

 5   for a ruling on our motion.

 6            THE COURT:  All right.  Mr. Collins, can you

 7   reply to that motion, as well, by the 20th?

 8            MR. COLLINS:  Yes, yes, I can.

 9            THE DEFENDANT:  Can I say something?

10            THE COURT:  No, you may not.

11            MR. COLLINS:  I can respond by the 20th.

12            THE COURT:  Okay.  The response to the motion to

13   find Mr. Benderoff in breach of the proffer and the other

14   earlier motion that we addressed, this motion to -- oh, the

15   reply and the motion to dismiss the indictment are due on

16   the 20th of August.

17            MR. COLLINS:  Very well.

18            THE CLERK:  Does he need to file a notice

19   withdrawing that motion, or can I terminate that motion

20   based on this hearing?

21            THE COURT:  You can terminate it based on this

22   hearing.

23            THE CLERK:  Thank you.

24            THE DEFENDANT:  Can I say something?

25            THE COURT:  No, Mr. Benderoff.  You are

            Case No. 20-CR-20380-02 U.S.A. vs. Brian Benderoff

Status Conference
Tuesday, August 3, 2021

 1   represented by counsel, and you may not say something.

 2   Speak to your attorney.

 3            Mr. Collins.

 4            MR. COLLINS:  The August 20th date is fine.  I

 5   would still like to -- my client, if we can have just a

 6   little more time to determine the dismissal of our motion,

 7   if that could be, you know, within a day or 24 hours, or

 8   something like that before that would make entry into the

 9   record.  He just needs more time, that's all, to consider

10   that withdrawal of our motion.

11            THE COURT:  Hang on just a minute.

12            (Brief pause.)

13            THE COURT:  Sorry.  Yes, you may have 24 hours

14   to indicate whether or not you're going to withdraw that

15   motion.

16            MR. COLLINS:  Thank you, Judge.

17            THE COURT:  And, of course, if you do not

18   withdraw the motion, then you've got a reply that's due on

19   that as well, due on the 20th.

20            MR. COLLINS:  That's fine.

21            THE COURT:  Okay.  Lisa, are there other open

22   items that need to be addressed?

23            Oh, the trial date.  I want you to know I'm not

24   inclined to, and do not plan to, extend the -- adjourn the

25   trial date.  We're going to go to trial on this case in

Status Conference
Tuesday, August 3, 2021

1    January, so get your horses lined up.

2         MR. COLLINS:  So the motion I filed to adjourn

3    the trial date and the reasons stated, they're in the

4    motion.  That motion is being denied, or --

5         THE COURT:  I'm telling you now that I'm not

6    inclined to grant the motion, and I'll make a formal

7    decision within the next week or so, issue a formal

8    decision.

9         MR. COLLINS:  All the other -- the motion

10   deadlines, as well, which were requested in the extensions

11   of the filing deadlines for the other motions, was included

12   in my motion to adjourn.  Hopefully, that will be addressed,

13   as well.

14        THE COURT:  It will be addressed.

15        This has been extended a number of times

16   already.  I gave Mr. Benderoff an extension far beyond what

17   the government thought was reasonable when he asked for an

18   extension last spring, and I'm not inclined to continue

19   adjourning this trial.  I want it to move forward.  Okay.

20        MR. COLLINS:  All right.

21        THE COURT:  Anything else, Lisa?  Is there

22   anything else open?

23        THE CLERK:  No.

24        THE COURT:  Anything else, counsel?

25        MR. YAHKIND:  Nothing for the government.

       Case No. 20-CR-20380-02 U.S.A. vs. Brian Benderoff

Status Conference
Tuesday, August 3, 2021

1          MR. COLLINS:  The reasons for the dates are

2   stated in the motion.  I'll ask the Court to give that due

3   consideration, that this is being done not because -- as a

4   courtesy to new counsel who just got all of this voluminous

5   discovery.

6          THE COURT:  I understand that, but Mr. Benderoff

7   has been represented by able counsel from the very

8   beginning; Mr. Cranmer, Mr. Gleeson, Mr. Hurford, and I know

9   that it's taken awhile to get up to speed, Mr. Collins, but

10  you've been on this case for a couple months now, and it's

11  time to move it forward.

12         All right.  I think we have a motion hearing set

13  for when, Lisa?

14         THE CLERK:  It's in October.

15         THE COURT:  Okay.  I will see you all then.

16  Thank you, counsel.

17         MR. COLLINS:  Thank you, Judge.

18         THE CLERK:  We're adjourned.

19         MR. YAHKIND:  Thank you.

20         (Proceedings concluded 12:12 p.m.)

21

22

23

24

25

Case No. 20-CR-20380-02 U.S.A. vs. Brian Benderoff

Status Conference
Tuesday, August 3, 2021

1

2                          —   —   —

3

4                    **C E R T I F I C A T I O N**

5

6    I, Suzanne Jacques, Official Court Reporter for the United

7    States District Court, Eastern District of Michigan, Southern

8    Division, hereby certify that the foregoing is a correct

9    transcript of the proceedings in the above-entitled cause on the

10   date set forth.

11

12

13   s/Suzanne Jacques                        8/11/2021
     Suzanne Jacques, RPR, RMR, CRR, FCRR          Date
14   Official Court Reporter
     Eastern District of Michigan
15

16                          —   —   —

17

18

19

20

21

22

23

24

25

            Case No. 20-CR-20380-02 U.S.A. vs. Brian Benderoff

# Exhibit 3

# Patrick **Hurford**
#### PLLC

600 Monroe Street (Suite 620)
Detroit, Michigan 48226
E-mail: patrick@hurford.law

*February 11, 2021*

<u>**VIA E-MAIL**</u>

Andrew Yahkind (andrew.yahkind@usdoj.gov)
Mark Chasteen (mark.chasteen@usdoj.gov)

      Re: <u>Brian W. Benderoff</u>

Dear Messrs. Yahkind and Chasteen,

      I write on behalf of my client, Brian Benderoff, to ask you (i) to withdraw your demand he submit for a polygraph examination, and (ii) engage in good faith efforts to reasonably resolve this matter.

      As you are aware, the administration of justice should be carried out in a manner to avoid the appearance of impropriety.  Where, as here, a member of a prosecutor's household has a business relationship with a target of a grand jury investigation, such appearance bellows. 5 C.F.R. Part 2635 (Subpart E).

      It is my understanding that                 is Vice President of her father's company, Intrastate Distributors, which is a beverage distribution company.  Based on the discovery provided by the government, Mrs.        company is a business partner with          Indeed, since at least 2016 (and prior to enactment of the Farm Bill in 2018), Intrastate has been distributing Marley's Mellow Mood, a CBD infused tea manufactured by          Company, MBC Holdings LLC, and now owned by New Age Beverage (of which       is a major shareholder).  (BENDEROFF_0567858–59 & 0568313–449.)

               role in this case is significant.  The proposed Rule 11 agreement offered by the government included        gain (which was more than ten times the gain to Benderoff) in Benderoff's loss calculation.  The fact that        has not been charged amplifies the appearance of impropriety created by the conflict.

      The actions taken by the government in this case are remarkable.

- On June 23, 2016, without probable cause, Benderoff was taken from the airport to an offsite government location, placed in a small holding cell, and interrogated multiple times.  This encounter lasted over ten hours.  Benderoff was not allowed to leave or make phone calls.  Yet, the government is taking the position there was no arrest. (BENDEROFF_0571197 (Nevada Gaming Control Board Agent James Sibbet stating he was informed Benderoff was detained at Detroit Metro Airport).)

# Patrick **Hurford**
PLLC

- Despite cooperating with the government and participating in proffers for years, Benderoff was given a proposed Rule 11 agreement by Mr. Yahkind with a 3-day expiration.  The government was aware of Benderoff's mental illnesses at that time.  And it gained greater understanding of Benderoff's illness and sensitivity when it received an e-mail from Benderoff's psychiatrist pleading for more time to consider the offer.  (The e-mail is attached as Exhibit A.)

- After cooperating and providing what Mr. Yahkind termed "truthful cooperation" and "substantial assistance," his proposed plea offer required pleading guilty to money laundering—a charge that is absent from the indictment after the plea offer was rejected.  This creates the appearance that the government did not want Benderoff to accept an offer and cooperate against others.

- The government, in an attempt to have me withdraw from representing Benderoff, has claimed I have a conflict of interest because Honigman responded to a subpoena issued to Schechter Wealth, stating that there may be some documents entered into evidence from Schechter Wealth under FRE 404(b) and the government may call Jordan Smith (an employee of Schechter Wealth) to testify.  This conflict claim is frivolous.  The government has not even produced a memo of Jordan Smith's interview.  Nor should they.  Benderoff was not a client of Schechter Wealth; he was a client of Jordan Smith PLLC and received legal advice from him.  (Despite the government's sensitivity to conflict issues, Mr. Yahkind raised no issue with Hertz Schram representing Benderoff's wife and Nena Downing, who have adverse interests in restitution and forfeiture proceedings concerning *United States v. Gross*.  Unlike Benderoff's wife, who was unaware of the Downing representation until last year, the government was aware of the conflict.  Indeed, Mr. Yahkind contacted Michael Rex (Hertz Schram), who is often co-counsel with Walter Piszczatowski (Hertz Schram) on criminal matters, on multiple occasions to determine if Benderoff's wife would provide information against her husband.  Later, Mr. Yahkind was present at the hearing when Mr. Piszczatowski (Hertz Schram) represented Ms. Downing to obtain victim status in the *Gross* case—a position directly adverse to the interests of Benderoff's wife.)

- After rejecting the plea offer, Benderoff was charged with conspiracy to commit wire fraud and individual wire fraud counts on August 26, 2020.  Last month, only after Benderoff sought to exercise his Constitutional right to suppress his June 23, 2016 statements and the fruits of such, the prosecutors threatened Benderoff with charges in *United States v. Gross*.  In that case, the sole defendant was charged, pleaded guilty, sentenced, and released from prison.  Such charges, at this time, would give rise to a nonfrivolous motion for vindictive prosecution.  In addition, to the extent Mr. Gross is used as a witness in either case, it should be noted that Mr. Yahkind did not contest, despite reason to do so, expert testimony offered on behalf of Mr. Gross to

## Patrick **Hurford**
#### PLLC

make him eligible for the RDAP program.  Upon information and belief, Gross lacks
a legitimate condition creating eligibility for such program. (E-mails attached as
Exhibits B & C.)

- During a pandemic, the government opposed a 6-month adjournment of trial until
February 2022 despite the fact this is not a "critical" case and discovery continues to
be produced.  At the hearing, the government suggested Benderoff should be entitled
to less preparation time because of his sophistication and law school experience.
(The government failed to note that Benderoff was hospitalized for several weeks due
to depression and anxiety after one month of law school and dropped out, having to
redo his first semester.)  Judge Edmunds granted Benderoff's motion to adjourn.

Most remarkable, however, is the government's demand to "polygraph Mr. Benderoff
regarding the veracity of the statements he made . . . during his proffer sessions."  This demand
comes the day after an adverse ruling on the motion for adjournment.  It demands the polygraph
occur at the end of March—a time during a pandemic when the court will be closed.  And at a
time Benderoff is unlikely to have received a coronavirus vaccination.  (For the reasons stated
below, a post-pandemic polygraph will remain inappropriate.)

The request is not targeted to specific issues important for the government's case.
Instead, the government asks Mr. Benderoff "to set aside the whole day."

Mr. Benderoff proffered with the government on October 4, 2016, November 2, 2016,
April 12, 2017, May 1, 2020, and May 16, 2020.  After those proffers, on June 15, 2020, the
government sent an e-mail to Mr. Benderoff's counsel, noting up until that time, Benderoff's
cooperation has been "full and truthful."  And on July 17, 2020, Mr. Yahkind informed
Benderoff's former counsel (Gerald Gleeson) via telephone that, in the government's view, not
only had Benderoff been truthful, but also the government would be willing to state that
Benderoff had already provided substantial assistance.

Given this, there is an appearance the government is not seeking to polygraph Benderoff
"regarding the veracity of his statements."  There is an appearance the government is attempting
to manufacture a breach of the proffer agreement despite its stated view Benderoff was
truthful—whether that be by a failure to submit to such an exam or less than a satisfactory result
in the government's sole discretion, a near certainty given Benderoff's mental illness and the
government's tactics to date.

I respectfully request the government rescind its demand to polygraph Benderoff.

*                    *                    *

Benderoff has a valid suppression motion.  He has a valid motion to dismiss for
presenting illegally obtained and immunized testimony and evidence to the Grand Jury (in this
regard, he has a valid motion to vitiate the proffer agreement due to the government's breach).
He has a valid motion for judgment of acquittal on statute of limitations grounds—there will be
appellate issues and jury instructions concerning the statute of limitations and the meaning of

# Patrick **Hurford**
### PLLC

"affecting a financial institution" if this is litigated.  Counts two through four fail to sufficiently allege a wire touched the Eastern District of Michigan, should be dismissed, and will be time barred at this point.  Counts five through seven should be dismissed because the alleged crime was completed in 2010.

And after taking the position that "while having Mr. Benderoff as a cooperating witness would certainly assist the government's case, we don't need him," the government's rationale for not charging　　　　becomes relevant at any sentencing, since　　　　gain will provide the lion's share of the government's loss position (in a case where there is no actual loss).  (E-mail attached as Exhibit D.)

To the extent discovery has been fulsome, I disagree Benderoff is not a necessary witness in this prosecution, and it is difficult to understand why those who gained significantly more have not been charged (or informed, like Jonathan Polter, they are not a target of the investigation).

This case can and should be resolved reasonably.  But that requires acknowledging Benderoff is a necessary witness, who has valid legal defenses.  It requires acknowledging there was an arrest.  It requires fashioning a plea offer taking this into account.  And justice in this case requires a plea offer that recognizes Benderoff would not have been prosecuted absent an unlawful arrest and interrogation.

In the event the polygraph demand is not rescinded, I respectfully request an audience with the Criminal Chief and Acting U.S. Attorney to discuss these issues.


Respectfully,

*/s/Patrick J. Hurford*

Patrick J. Hurford

(Attachments)


cc:  John Neal