UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiffs,                                      No. 20-cr-20380

v.                                                Honorable Nancy G. Edmunds

D-2 BRIAN W. BENDEROFF
       Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT BENDEROFF'S MOTION TO DISMISS THE INDICTMENT [35]**

This matter is before the Court on Defendant Brian W. Benderoff's motion to dismiss the indictment. (ECF no. 35). The government filed a response with sealed exhibits and Defendant filed a reply. (ECF Nos. 44, 74.) The Court finds that the matter is fully briefed and oral argument is not necessary on this matter. (LR 7.1(f)(2), ECF No. 39.) For the reasons set forth below, Defendant's motion is denied.

**I.    Background**

On June 23, 2016, Defendant Benderoff (hereinafter Defendant) and co-defendant William Gonte were allegedly detained by federal agents at the airport in Detroit. Defendant describes the event as involving "10 hours of detainment and interrogation." (ECF No. 36 at 6 of 20.) The government characterizes the events of June 23, 2016, slightly differently, noting only that "[o]n June 23, 2016—months before he executed his proffer agreement with the government—Benderoff voluntarily submitted to an interview with federal law enforcement agents." (Gov't's Resp., ECF No. 44 *sealed*, PageID.271.) The government asserts that during that interview, Defendant "provided extensive detail

1

about various crimes in which he has engaged, including the life insurance fraud scheme charged in this indictment." (*Id.*, PageID.271-72.)

After these events, "prosecutors communicated to [Defendant's] former attorneys [that] he was a target of an investigation involving the subject matter" of statements he made on June 23. (ECF No. 35, PageID.144.) On October 4, 2016, Defendant, his attorney and two Assistant United States Attorneys executed a proffer agreement bearing the date August 29, 2016. (ECF No. 35-1.) Defendant proffered multiple times over several years. (ECF No. 35 PageID.145.) Defendant also provided documents to the Government. (ECF No. 35, PageID.145.)

On August 26, 2020, Defendants were indicted on seven counts: Count 1, conspiracy to commit wire fraud affecting a financial institution, 18 U.S.C. § 1349; and Counts 2 through 7, wire fraud affecting a financial institution and aiding and abetting, 18 U.S.C. §§ 1343 and 2. (Indictment, ECF No. 1.)

The proffer agreement is the basis of Defendant's motion to dismiss indictment. Defendant argues that the Government used his proffer statements, and the documents he submitted at the Government's request, to obtain the indictment against him. (ECF No. 35.) It is Defendant's position that he "agreed to speak and provide full and truthful information" and in exchange, the government agreed to consider his "proffers in making charging and sentencing decisions" and "not to use [his] proffers against him  (unless an exception not relevant here applies)." (ECF No. 35, PageID.145.)

**II.    Analysis**

Defendant argues that presentation of proffered evidence to the Grand Jury was a material breach of the proffer agreement and therefore the indictment must be dismissed.

2

Defendant brings this motion pursuant to Fed. R. Crim. P. 12(b)(3) to dismiss the indictment, alleging that the Government used his immunized statements to obtain it, and that was a material breach of contract and a violation of Defendant's Fifth Amendment right against self-incrimination. Additionally, Defendant requests an in-person evidentiary hearing, and he requests leave to inspect the grand jury transcripts, or in the alternative, requests the Court conduct an *in camera* inspection of the transcripts.

The Government argues that Defendant has offered no support for this claim and makes only a conclusory assertion that there are no alternative sources of information for certain allegations contained within the indictment. (ECF No. 44 *sealed*, p. 2 of 27.) The Government first argues that each of the indictment paragraphs referenced by Defendant is "supported by alternative sources of information obtained before Benderoff's indictment" and that Defendant had provided "extensive detail about various crimes," including the life insurance fraud scheme charged in this indictment, during the June 23, 2016 "interview" to which Defendant had "voluntarily submitted." (ECF No. 44, PageID.271-72.) With respect to records, the Government points out that Defendant was issued a grand jury records subpoena. (ECF No. 44 PageID.274.) Finally, the Government argues that the plain language of the proffer agreement only restricts proffer statements from being used in the government's "case-in-chief" and other limited circumstances.

The parties disagree on how restrictive the proffer agreement is. The Court is "governed by normal 'contract law standards'" when interpreting proffer agreements." *United States v. Rich*, 2021 WL 4144059, at *6 (6th Cir. 2021) (citing *United States v. Fitch*, 964 F.2d 571, 574 (6th Cir. 1992)). Defendant has been granted "pocket immunity"

under the agreement. *See U.S. v. Mendizabal*, 214 Fed. Appx. 496, 501 (6th Cir. 2006). "[A] defendant granted only pocket immunity, . . . lacks grounds for insisting on a *Kastigar* hearing, and normal contract law and remedies govern any alleged breach by prosecutors." *Id.* As an initial matter, the issues before the Court are well-briefed and the Court denies Defendant's request for a hearing.

"[P]roffer agreements are contracts, so '[t]he conditions which will constitute a breach . . . are governed by the agreement itself.'" *Rich*, 2021 WL 4144059, at *7. "General principles of contract law dictate that we interpret the proffer agreement according to its plain meaning and give effect to its unambiguous terms." *Rich*, 2021 WL 4144059, at *6. The proffer agreement between the parties provides the following restriction on the use of proffer statements:

> (6) Restrictions on use of proffer statements.
>
> (a) To prove guilt. Except as otherwise specified in this agreement, this office will not offer any proffer statement made by you or your client in this office's case-in-chief in any criminal prosecution of your client.
>
> (b) At sentencing. Except as otherwise specified in this letter, if your client is convicted, this office will not use your client's proffer statements as direct evidence in support of any increase to the applicable offense level . . . .

(Proffer Letter Agreement, Section (6), ECF No. 35-1.)

Defendant argues that the use of proffer statements in a grand jury proceeding is not one of the allowable uses under section 7 of the agreement. Section 7, "Permissible uses of proffer statements" provides:

> (a) Cross-examination and rebuttal of inconsistencies. This office may use your client's proffer statements in any proceeding to cross-examine your client. The office may use your client's proffer statements to counter any evidence offered by or on behalf of your client that is inconsistent with any proffer statements made by your client, including testimony of any witness

4

> elicited by your client or an attorney representing your client, on direct or cross-examination, and any reasonable inference suggested by evidence offered or elicited by or on behalf of your client.
>
> (b) Derivative use of information.  There is no restriction on this office's use of any evidence derived directly or indirectly from your client's proffer statements.

(ECF No. 35-1, PageID.159-60.)  Defendant argues that "paragraph [7] sets forth the only permissible uses of [his] proffer statements," relying on "*expressio unius est exclusion alterius*"  as a "cannon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative." (ECF No. 35, PageID.148, citing Black's Law Dictionary Seventh Ed., pp. 602.)

The Government argues that the proffer agreement restriction on the use of proffer statements only applies to use during the Government's "'case-in-chief' and other limited circumstances that are specifically delineated in the proffer agreement." (ECF No. 44 *sealed*, PageID.271.)  The Government argues that the permissible uses in paragraph 7 are exceptions to the general prohibition against the use of proffer statements in the case-in-chief.  The "Court must give meaning to all the terms of a contract, and construe all the provisions together."  *Wixon v. Federal Ins. Co.*, 2005 WL 1677983, at *9 (E.D. Mich. July 14, 2005) (citing *Cincinnati Ins. Co. v. Zen Design Group, Ltd.*, 329 F.3d 546, 553 (6th Cir. 2003)).

Defendant relies on the Eighth Circuit's decision in *United States v. Perry* to argue that to the extent that the proffer agreement is ambiguous, it should be construed against the government. *See United States v. Perry*, 640 F.3d 805, 813 (8th Cir. 2011) ("[T]he proffer agreement, viewed as a whole, ambiguously delineates the limitations on the use

5

of information derived from [Defendant's] proffer and must, accordingly, be construed against the Government.").[1]

Sections 6 and 7 of the proffer agreement are not ambiguous. A plain reading of the agreement is that the permissions in paragraph 7 are exceptions to the general prohibition in paragraph 6 on using proffer statements in the case-in-chief. Defendant's reading would render the words "in this office's case-in-chief" altogether superfluous. *Gallo v. Moen Inc.*, 813 F.3d 265, 273 (6th Cir. 2016) ("courts should interpret contracts to avoid superfluous words . . . ."). Where there was no restriction on using the proffered evidence during grand jury proceedings, the Court cannot find that the Government breached the proffer agreement had it done so.

Nor is the term "case-in-chief" ambiguous. The Sixth Circuit recently addressed a very similar restriction in a proffer letter. One of the defendants in *United States v. Rich* argued that the presentation of evidence to a Grand Jury could also be called a "case-in-chief" in the context of the Grand Jury proceeding, and that the proffer agreement was therefore at least ambiguous in that respect. The Sixth Circuit disagreed.

> The term "case-in-chief" does not render the agreement ambiguous. "Case-in-chief" is a term of art that refers to a trial, and not preliminary proceedings. *See Case-in-Chief*, BLACK'S LAW DICTIONARY (11th ed. 2019). It is not

---

[1] Defendant also cites *dicta* in a footnote in *U.S. v. Heatley*, 39 F.Supp.2d 287 (S.D. N.Y. 1998), wherein the court noted that the proffer agreement did not address the issue of grand juries, therefore it would appear that "whether the government may use the proffer statements directly before a grand jury . . . depend[ed] upon whether the proffers are construed as a blank waiver of the Fifth Amendment privilege except for the limitations expressly placed on the government" or whether they were "viewed as a limited waiver only for the purposes which the proffer agreement allows the government." *Id.* at n. 15. "Given the general presumption against waiver of rights and the rule requiring construction of the proffer agreements against the government, the Court would be inclined to find only a limited waiver, but need not decide the issue." *Id.* This statement is *dicta* from another Circuit and the Sixth Circuit's recent *Rich* opinion, discussed *infra*, is on point.

used to describe grand jury proceedings because they are one-party affairs without any defense or rebuttal.

*United States v. Rich*, 2021 WL 4144059, at *7 (6th Cir. 2021). The Sixth Circuit agreed with the district court that the "proffer agreement did not restrict the government's ability to use [the defendant's] statements during grand jury proceedings." *Id.* ; *see also United States v. Warren*, 728 Fed. Appx. 249, 258 (5th Cir. 2018) ("the term case-in-chief is uniquely linked with trials, not any preliminary proceedings"). Like *Rich*, this Court finds that the proffer agreement at issue did not restrict the use of proffer statements in Grand Jury proceedings.

For the reasons set forth above, the Court finds that a use of information from the proffer for the Grand Jury was a not a breach of the proffer agreement.[2] In light of this finding the Court need not reach the parties' additional issues including whether there were alternative sources of the information contained in specific paragraphs of the indictment.

### III.     Conclusion

For the reasons stated herein, the Court denies Defendant's motion to dismiss the indictment (ECF no. 35).

SO ORDERED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: April 18, 2022

---

[2] This finding does not address the Government's pending motion in limine (ECF No. 57) regarding the use of proffered statements and evidence at trial.

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 18, 2022, by electronic and/or ordinary mail.

                              <u>s/Lisa Bartlett</u>
                              Case Manager